[Cite as *State v. Morgan*, 2023-Ohio-3913.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-10 |
| | : | |
| v. | : | Trial Court Case No. 22CR332 |
| | : | |
| TODD MORGAN | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 27, 2023

. . . . . . . . . . .

J. TANNER DUNCAN, Attorney for Appellant

ANTHONY E. KENDELL, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-appellant Todd Morgan appeals from a judgment of the Miami County Court of Common Pleas convicting him of one count of aggravated assault and one count of domestic violence. For the reasons that follow, we will affirm the judgment of the trial court.

I. Facts and Course of Proceedings

{¶ 2} On July 20, 2022, a Miami County grand jury indicted Morgan on one count of kidnapping, a first-degree felony in violation of R.C. 2905.01(A)(3), and one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(1). The indictment related to Morgan's actions from a week earlier involving a female victim.

{¶ 3} A trial was scheduled for March 8, 2023. On that date, the parties entered into a plea agreement. Pursuant to that agreement, Morgan pled no contest to a Bill of Information that contained one count of aggravated assault, a fourth-degree felony in violation of R.C. 2903.12(A)(1), and one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A). As part of the plea agreement, the State agreed to remain silent at sentencing. At the plea hearing, Morgan stipulated that he had knowingly caused serious physical harm to the victim, who was a family or household member. The trial court found Morgan guilty of aggravated assault and domestic violence.

{¶ 4} A sentencing hearing was held on April 3, 2023. At the conclusion of the sentencing hearing, the trial court sentenced Morgan to 17 months in prison on the aggravated assault count and six months in jail on the domestic violence count. The trial court ordered the sentences to be served concurrently. Morgan filed a timely notice of appeal.

II. The Trial Court's Reference to a "Cycle of Domestic Violence" Did Not Render Morgan's Prison Sentence Contrary to Law

{¶ 5} Morgan's sole assignment of error states:

THE TRIAL COURT ERRED IN SENTENCING MORGAN TO [A] PRISON SENTENCE BASED UPON ITS UNILATERAL BELIEF THAT THE VICTIM WAS STUCK IN A CYCLE OF DOMESTIC VIOLENCE WITHOUT EXERT [SIC] TESTIMONY SUPPORTING THAT BELIEF.

{¶ 6} When reviewing felony sentences, we must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain enumerated statutes, or (2) the sentence is otherwise contrary to law. *Id.* at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 7} Morgan does not point to any trial court findings under the enumerated statutes that were not supported by the record. As a result, Morgan's sentence may be modified or vacated on appeal only if the sentence is clearly and convincingly contrary to law. " '[C]ontrary to law' means that a sentencing decision manifestly ignores an issue or factor which a statute requires a court to consider." (Citation omitted.) *State v. Lofton*, 2d Dist. Montgomery No. 19852, 2004-Ohio-169, ¶ 11. For example, "[a] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.), citing *State v. Pawlak*, 8th Dist. Cuyahoga

No. 103444, 2016-Ohio-5926, ¶ 58.

{¶ 8} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.), citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. Therefore, "when making a felony sentencing decision, a trial court must consider the R.C. 2929.11 purposes of felony sentencing and the R.C. 2929.12 felony sentencing factors, but there is no requirement for the trial court to make any on-the-record findings regarding R.C. 2929.11 and R.C. 2929.12." *State v. Benedict*, 2d Dist. Greene No. 2020-CA-25, 2021-Ohio-966, ¶ 8. "It is enough that the record demonstrates that the trial court considered R.C. 2929.11 and R.C. 2929.12 prior to imposing its sentence." *State v. Trent*, 2d Dist. Clark No. 2020-CA-61, 2021-Ohio-3698, ¶ 15.

{¶ 9} In this case, the record establishes that Morgan's 17-month prison sentence is not contrary to law; the sentence is within the authorized statutory range for fourth-degree felonies. R.C. 2929.14(A)(4). The record also establishes that the trial court considered the factors under R.C. 2929.11 and R.C. 2929.12 before imposing its sentence. For example, at the sentencing hearing, the trial court stated that it had considered the purposes and principles of sentencing in R.C. 2929.11, the recidivism and seriousness factors of R.C. 2929.12, the factors set forth in R.C. 2929.13, and Morgan's lengthy criminal history, much of which related to his prior actions involving the victim in this case. Sentencing Hearing Tr. 16-23. In addition, the trial court made findings

regarding the relevant statutory sections. While we will not repeat all of what was said and considered at the sentencing hearing, we note that the trial court stated that (1) Morgan had prior charges of domestic violence involving the victim in this case that were either reduced to disorderly conduct charges or dismissed; (2) the police reports involving the prior charges against Morgan showed a pattern of the victim alleging physical violence, being afraid of Morgan, and then recanting the allegations; (3) Morgan was not eligible for mandatory community control, because the aggravated assault count was a fourth-degree felony and physical harm was caused; (4) the victim's hand was broken in this matter and a bone in her neck was injured in a way consistent with strangulation; (5) Morgan had a history of criminal convictions and had not responded favorably to sanctions previously imposed by an adult court; and (6) Morgan demonstrated no genuine remorse for his actions. *Id.* at 16-24.

{¶ 10} Further, in its judgment entry, the trial court stated, in part: "The Court has considered the record, oral statements, Defendant's Sentencing Memorandum, State's Exhibit 1, the Presentence Investigation, the Pretrial Services Report, Defendant's criminal history, Section 2929.11, Section 2929.13, Section 2929.12, and the victim impact statements prepared."

{¶ 11} Given the record before us, we must conclude that the record supports the trial court's findings under certain enumerated statutes and that the sentence is not otherwise contrary to law. The trial court meticulously considered all the information before it, including Morgan's criminal history, Morgan's statements to the trial court, the victim's oral statements to the court, the prepared victim impact statements, the

presentence investigation report ("PSI"), and the relevant statutory factors. Morgan does not argue that the trial court failed to consider any of this. Rather, Morgan contends that the trial court should have given more weight to the victim's statements.

{¶ 12} The trial court found the victim's most recent statements about what had happened on July 15, 2022, to be less than credible. "[W]e defer to trial court decisions on credibility issues, as those courts are in the best position to make that determination." *State v. Myers*, 2d Dist. Darke No. 2019-CA-22, 2020-Ohio-4325, ¶ 23, citing State v. *Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). Notably, the statements made by the victim in support of a lighter sentence for Morgan were not consistent with her prior statements to the police in July 2022, which were summarized in the PSI, or with Morgan's stipulation that he knowingly caused serious physical harm to the victim.

{¶ 13} Morgan also contends that the trial court's reference to a "cycle of domestic violence" somehow tainted the court's analysis of whether it should impose a prison sentence. Morgan cites to a portion of the sentencing transcript in which the trial court stated, in part:

> Mr. Morgan, everyone knows what is going on here. This is a textbook case of the cycle of domestic violence and battered wife syndrome. As noted, this is the fourth time you've been charged with domestic violence [involving the same] victim. Now I get it that all charges were reduced or dismissed in some fashion, but the summaries of the circumstances surrounding the reductions and/or dismissals mirror exactly what has

happened here today in this case. In every instance, [the victim] has retracted her statements, does not follow through with law enforcement after she expresses fear of you, not her ex-husband, you. And don't try to tell me that this is a coincidence or she's just making these situations up because the medical records do not lie. It is undisputable – undisputable evidence in this case that you inflicted these injuries at – at your own hands.

She had scratch marks and fingerprints on both sides of [her] neck, there were bruises under her eyes, she had a broken hand, a broken bone or injury to her neck that was indicative of strangulation. She didn't get these types of injuries falling out of a car. You did this, Mr. Morgan. You strangled her, and if that's not enough, the doctors found several old injuries in the process of healing: broken ribs that she reported that this brutal conduct has been going on for years. And it's demonstrated through the previous cases. That's the record. She has repeatedly complained of abuse, but she is too fearful of you and her life to follow through with law enforcement.

* * *

I also want to discuss this – the Victim Impact Statements on a whole. It is obvious that they're all products of the cycle of abuse and are demonstratively false. The victim claims she was so intoxicated that she jumped out of a car when Mr. Morgan was driving. That contradicts everything she told the doctors at the ER, the deputies and the reporting

party in this case. The deputies and the doctors indicate no sign of intoxication and that the injuries were consistent with domestic abuse, not jumping out of the car. But this statement does demonstrate how severe and sad the psychological injuries are to this woman and are the result of the abuse that she suffered at the hands of the Defendant.

So the court considers the Victim Impact Statements to be clear evidence of the continuing manipulation and the domestic violence cycle and the threats that this Defendant poses to this woman. However, the court will not allow the cycle of violence to continue and intends to do everything possible to break the cycle of domestic violence between these two parties.

I'm going to protect the victim in this case from herself and also from the Defendant. With that being said, as to the Felony 4 Aggravated Assault, the court will impose seventeen months at the Ohio Department of Rehabilitation and Correction. And on the M1 Domestic Violence, the court will impose a jail sentence of six months.

Sentencing Hearing Tr. 24-27.

{¶ 14} Morgan contends that the trial court erred by not believing the statements the victim made in the victim impact statements. According to Morgan, the trial court "explained that it did not believe [the victim] when she said Morgan did not harm her. Instead and without evidence, it decided that [the victim] must be stuck in a domestic-abuse cycle and deemed everything she consistently said throughout the course of this

case to be false. The trial court erred when it did so." Appellant's Brief, p. 4. Morgan argues that before the trial court could rely on a theory that the victim was stuck in a cycle of domestic violence, some form of expert testimony needed to be entered into the record. *Id.* at 5-6. In support of his argument, Morgan cites the following cases: *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91; *State v. Dyson*, 2d Dist. Champaign No. 2000-CA-2, 2000 WL 1597952 (Oct. 27, 2000); and *State v. Thomas*, 2d Dist. Montgomery No. 19435, 2003-Ohio-5746.

{¶ 15} We have reviewed the three cases Morgan cites. None of these cases involved a challenge over a sentence received by a defendant. Rather, each case involved whether expert testimony regarding the "battered woman syndrome" could be introduced into the record to explain the actions of the victim in that case. The recurring theme in those cases was that expert testimony may be helpful to explain to a jury why a victim would remain with a person who has physically abused the victim or why a victim might believe she is in imminent danger when the jury considers the issue of self-defense. The idea is that "[e]xpert testimony on the battered woman syndrome would help dispel the ordinary lay person's perception that a woman in a battering relationship is free to leave at any time" and other popular misconceptions. *Haines* at ¶ 32. It is unclear how these cases cited by Morgan are relevant to a trial court's reliance at sentencing on an accused's pattern of criminal conduct and physical abuse to support the imposition of a prison sentence rather than community control sanctions. The trial court did not need expert testimony to point out the obvious recurring theme reflected in the record before it. Further, we disagree with Morgan's implication that the trial court imposed a prison

sentence solely based on the conclusion that the victim was trapped in a domestic violence cycle. Instead, the trial court painstakingly reviewed all the information before it, applied the relevant statutory factors, and imposed a sentence within the acceptable range provided by statute.

{¶ 16} Finally, Morgan notes that "Ohio's Constitution was recently amended to make sure victims had their voices heard in criminal proceedings. Here, [the victim] was trying to tell everyone that Morgan did not abuse her." Appellant's Brief, p. 5. According to Morgan, "[t]he trial court made the unilateral decision to silence [the victim] so it could 'protect her from herself.'" *Id.* However, Morgan ignores the fact that he stipulated that he knowingly caused serious physical harm to the victim. It does not make sense for Morgan to then argue that the trial court erred in not believing the victim's testimony that the abuse did not happen. Similarly, we are unconvinced by Morgan's attempt to use the enactment of Marsy's law to protect the accused by limiting the trial court's role in making credibility determinations at sentencing, especially involving testimony that is inconsistent with the physical evidence of record and prior statements made to police officers. Rather, "Marsy's Law states that its express purpose is to secure justice and due process for victims and provide rights to victims that must be protected with the same vigor as an accused's rights." *City of Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 167, ¶ 16, citing Ohio Constitution, Article I, Section 10a(A). In short, Marsy's Law cannot be used by the accused as Morgan suggests.

{¶ 17} The sole assignment of error is overruled.

III.    Conclusion

{¶ 18} Having overruled Morgan's sole assignment of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.